[Cite as *Vogt v. Total Renal Care, Inc.*, 2016-Ohio-4955.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103102**

---

## ANN VOGT

PLAINTIFF-APPELLANT

vs.

## TOTAL RENAL CARE, INC., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-809649

**BEFORE:** Keough, J., Jones, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 14, 2016

**ATTORNEYS FOR APPELLANT**

Caryn M. Grodel
Chastity L. Christy
Tiffany C. Fischbach
Matthew S. Grimsley
Caryn Groedel & Associates Co., L.P.A.
31340 Solon Road, Suite 27
Solon, Ohio 44139

**ATTORNEYS FOR APPELLEES**

Bruce G. Hearey
Jaclyn C. Staple
Natalie M. Stevens
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
127 Public Square, Suite 4130
Cleveland, Ohio 44114

KATHLEEN ANN KEOUGH, J.:

{¶1} Plaintiff-appellant, Ann Vogt ("Vogt"), appeals the trial court's judgment that granted summary judgment to defendants-appellees, Total Renal Care, Inc. ("TRC"), DaVita Healthcare Partners Inc. ("DaVita"), and Brian Jackson ("Jackson") (collectively "appellees"). We affirm in part, reverse in part, and remand.

## I. Background

{¶2} In 2004, following a merger with her prior employer, Vogt became an employee of TRC, a wholly owned subsidiary of DaVita. Vogt was a regional operations director ("ROD") for TRC in the Trailblazers group, which reported up through Steve Priest, group senior vice-president, and later Jackson, divisional vice-president. As a ROD, Vogt had operational responsibility for dialysis centers located in several cities in Ohio, including Cleveland. Vogt was respected by her peers and managers, and received year-end performance bonuses and profit-sharing awards. Vogt reported to Priest until February 2011, when she began reporting to Jackson, who had recently been hired as divisional vice-president reporting to Priest.

{¶3} Vogt and TRC vigorously competed with other dialysis centers in the Cleveland area, including the Advanced Dialysis centers run by Drs. Hany Anton and Ronald Flauto. In early 2011, TRC and DaVita acquired 80 percent of the Advanced Dialysis practice. Although Vogt had previously been involved with the integration and transition of dialysis centers acquired by TRC, a decision was made that Vogt and Priest would not be involved in this integration. Jackson told Vogt that although she could work

on the Advanced Dialysis integration behind the scenes, she was not permitted to speak to the doctors nor go into any of the facilities they had formerly owned. At his deposition, Jackson testified that he had no part in negotiating the deal with the doctors or in the decision to exclude Vogt and Priest, and did not know why Vogt was prohibited from interfacing with them. He admitted that he speculated to her and members of the integration team around the time of the acquisition that the reason was "perhaps cultural, it could have been competition, it could have been personality."

{¶4} Although she did not take on ROD responsibilities for the two Advanced Dialysis centers, from February 2011 through July 2011, Vogt remained in charge of all the dialysis centers for which she had previously been responsible. When an opportunity in TRC's Pioneer Group became available, Jackson recommended Vogt for the position. The Pioneer Group was a newly formed research and development think tank that developed operational excellence standards for TRC dialysis centers nationwide. There were only five RODs from across the country in the group. In July 2011, Vogt transferred to the Pioneer Group, allocating 50 percent of her time to operational responsibilities for dialysis centers in Canton and 50 percent to the process improvement responsibilities of the Pioneer Group.

{¶5} Following Vogt's transfer to the Pioneer Group, TRC hired Stephen Gates as the ROD for the Cleveland market. In April 2012, TRD promoted David Spears, the ROD in the Toledo and Dayton areas, from ROD to Group Regional Operations Director ("GROD"). Gates was subsequently terminated from TRC in June 2014.

{¶6} In May 2012, after approximately six months in the Pioneer Group, Vogt told her supervisor that it was time for her to leave TRC. Vogt ultimately resigned in December 21, 2012, after negotiating with a new employer for an assistant director of operations position.

{¶7} In June 2013, Vogt filed suit against TRC, DaVita, and Jackson, asserting claims for gender discrimination, retaliation, and promissory estoppel. Appellees subsquently filed a motion for summary judgment on all claims, which the trial court granted. Vogt now appeals from the trial court's judgment.

## II. Analysis

### A. Standard of Review

{¶8} Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶9} It is well established that the party moving for summary judgment bears the burden of demonstrating that no material issue of fact exists for trial. *Dresher v. Burt*, 75

Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Id.* The nonmoving party has a reciprocal burden of specificity and must set forth specific facts showing that there is a genuine issue for trial. *Id.* The reviewing court evaluates the record in a light most favorable to the nonmoving party. *Saunders v. McFaul*, 71 Ohio App.3d 46, 50, 593 N.E.2d 24 (8th Dist.1990). Any doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

B.    Gender Discrimination

{¶10} To establish a prima facie case of gender discrimination, the employee must show that (1) she is a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) either a person outside the protected class replaced her or she received different treatment than a similarly situated non-protected employee. *Goodyear v. Waco Holdings, Inc.*, 8th Dist. Cuyahoga No. 91432, 2009-Ohio-619, ¶ 31, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

{¶11} If the employee makes a prima facie showing of discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at ¶ 32. Then, if the employer meets its burden, the

employee must prove that the proffered reason was merely pretext for underlying discrimination. *Id.*

{¶12} It is undisputed that Vogt is a member of a protected class and that she qualified for the position of ROD and GROD. In their motion for summary judgment, appellees asserted that Vogt failed to establish a prima facie case of gender discrimination, however, because she was not subject to any adverse employment actions nor treated differently because of her gender.

{¶13} An adverse employment action is any "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Tepper v. Potter*, 505 F.3d 508 (6th Cir.2007). "The adverse action need not result in pecuniary loss, but must materially affect the plaintiff's terms and conditions of employment." *Peterson v. Buckeye Steel Casings*, 133 Ohio App.3d 715, 727, 729 N.E.2d 813 (10th Dist.1999).

{¶14} In her brief in opposition to appellees' motion for summary judgment, Vogt asserted that she had demonstrated a prima facie claim of gender discrimination because she had been subjected to numerous adverse employment actions; specifically,

(1) exclusion from the Advanced Dialysis deal;
(2) lower performance ratings, reduced bonus, and withheld stock awards;
(3) her transition to the Pioneer Group;
(4) the hiring of Stephen Gates to fill the position she held in her former group;
(5) David Spears's promotion to Group Regional Operations Director following her transition to the Pioneer Group; and
(6) constructive discharge.

**{¶15}** Our review of the record demonstrates there is a genuine issue of material fact regarding whether Vogt was subject to an adverse employment action when she was removed from any participation in TRC's integration and management of the Advanced Dialysis centers acquired from Drs. Anton and Flauto.

**{¶16}** Appellees assert this was not an adverse employment action because it was simply a "company business decision" to remove both Vogt and Priest from the integration and management of the acquired centers because Drs. Anton and Flauto did not care for Vogt and Priest's management style, or the way they dealt with dialysis patients. But in his deposition, Dr. Anton testified that he never said anything negative about Vogt to TRC's management, never told anyone at TRC that he did not want Vogt going into any of the dialysis centers, and did not ask or demand that she be removed from the integration or from her job as Cleveland ROD. Dr. Anton also testified that he did not know Vogt well enough to have an opinion of her, contradicting TRC's assertion that Vogt and Priest were removed because of the doctors' past competitive experience with them. In light of Dr. Anton's testimony, which contradicts TRC's asserted reasons for removing Vogt, we find a genuine issue of material fact regarding whether Vogt's removal from the integration and management of the acquired Advanced Dialysis centers was merely a neutral business decision by TRC or an adverse employment decision motivated by Vogt's gender.

**{¶17}** We are not persuaded by TRC's argument that Vogt's prima facie claim of gender discrimination regarding her removal from the Advanced Dialysis integration fails because she cannot demonstrate that she was treated any differently than Priest, a male and

her superior, who was also excluded from the integration and management of the Advanced Dialysis centers. The record reflects that Priest lived and worked in Tennessee, and rarely had occasion to visit the Cleveland area as part of his job responsibilities, so other than a territory change, his exclusion from the Advanced Dialysis centers had little effect on his day-to-day work life. Vogt's territory was the Cleveland area, however, so her exclusion from the Advanced Dialysis centers directly impacted her daily duties.

{¶18} We also find a genuine issue of material fact regarding Vogt's claim that her transfer to the Pioneer Group was an adverse employment action. Jackson testified that he recommended Vogt for the position because it was a premier position within TRC open to only a few, highly select employees, and because it would give Vogt exposure to senior corporate leaders, which she did not have in her current position, and an opportunity to advance further within the company. Vogt, on the other hand, testified that Jackson "forced" her to transfer to the Pioneer Group, despite her requests that she be allowed to either remain a ROD in a different geographical area or accept a severance agreement. Furthermore, although appellees assert that the transfer was not adverse because Vogt's compensation did not change after her transfer to Pioneer, Vogt testified that her yearly bonuses were lower than before and she received no stock options after the transfer, which she had received almost every single year prior to the transfer.

{¶19} With respect to Vogt's other claims of allegedly adverse employment actions, we find that TRC's hiring of Stephen Gates to fill the position Vogt held prior to her transition to the Pioneer Group does not constitute an adverse employment action and does

not support her gender discrimination claim. Vogt's assertion that Gates's hiring supports her gender discrimination claim ignores the undisputed fact that she was not even a candidate for the position Gates applied for. Furthermore, even with his signing bonus, Gates's compensation was less than Vogt's, i.e., with her salary and annual bonus potential, Vogt's potential compensation was over $175,000 while Gates's was $156,000 — hardly evidence of gender discrimination.

{¶20} Moreover, once employed, Gates struggled to develop a relationship with Drs. Anton and Flauto and was subsequently instructed that, like Vogt, he too was not to speak directly with the doctors. Eventually, Gates was terminated from the same position from which Vogt had transferred; unlike Vogt, Gates was not offered an opportunity to transfer to another position within the company. In short, Vogt was treated more favorably than Gates, not less.

{¶21} Likewise, David Spears's promotion to GROD instead of Vogt does not constitute an adverse employment action and does not otherwise support Vogt's gender discrimination claim. To establish a prima facie case for a failure to promote claim, Vogt must establish that: (1) she is a member of a protected class; (2) she applied for and was qualified for the position; (3) she was considered for and denied the promotion; and (4) individuals who were not members of the protected class received promotions. *Rice v. Cuyahoga Cty. Dept. of Justice*, 8th Dist. Cuyahoga No. 85576, 2005-Ohio-5337, ¶ 41.

{¶22} Vogt's assertion that the jury should determine why TRD promoted Spears instead of her ignores the most salient point that defeats her claim: she was not a candidate

for the GROD position. The evidence demonstrated that Spears was promoted from ROD to GROD in April 2012 because there was growth in the Dayton and Toledo markets within the Fusion division, and TRC needed someone to take on more responsibility. Vogt had transferred to the Pioneer Group ten months earlier, however, and no longer worked in the Fusion division. Thus, Vogt was not a candidate for the position; she was not considered for the position and then denied it. In short, there is simply no evidence that Spears's promotion had anything to do with Vogt or her gender.

{¶23} Furthermore, there is no evidence to suggest that Spears's promotion to GROD materially and adversely changed the conditions of Vogt's employment in any way. In fact, the evidence demonstrates that as of April 2012, when Spears was promoted, Vogt's salary and bonus potential was higher than the salary and bonus potential Spears received when he was promoted to GROD. Thus, Vogt was treated more favorably than Spears, not less.

{¶24} Finally, the evidence does not support Vogt's claim that she was constructively discharged from TRC. Constructive discharge exists where an employer's actions make working conditions so intolerable that a reasonable person under the circumstances would feel compelled to resign. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 588-589, 664 N.E.2d 1272 (1996). A claim of constructive discharge is in essence a claim that the employer's conduct was so egregious that the employee was forced to sever the employment relationship involuntarily. *Bowers v. Hamilton City School Dist. Bd. of*

*Edn.*, 12th Dist. Butler No. CA2001-07-160, 2002 Ohio App. LEXIS 1356, *16 (Mar. 25, 2001).

**{¶25}** Ohio courts generally apply an objective test to determine whether an employee was constructively discharged, evaluating "whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent." *Mauzy* at 589. The court should consider a wide range of factors, such as "reductions in sales territory, poor performance evaluations, criticism in front of co-employees, [and] inquiries about retirement intentions * * *." *Id.*

**{¶26}** Vogt claims she was constructively discharged because "appellees removed [her] from the Advanced Dialysis integration and the Cleveland area; belittled [her] in front of coworkers; made it clear to [her] and all her coworkers and subordinates that Dr. Anton preferred to work with men; and required [her] to transfer to the Pioneer Group, where her supervisor [Lisa Dawe] asked her when she was going to quit."

**{¶27}** Viewing the evidence in a light most favorable to Vogt, we conclude that TRC's actions in this case would not make a reasonable person feel compelled to resign or to believe that termination was imminent. The fact that Vogt was disappointed or her feelings were hurt about what had happened to her is not sufficient to establish a constructive discharge claim. "An employee's perception that he or she was forced to resign must be judged without consideration of his or her undue sensitivities." *Bowers* at *17. In fact, Vogt admitted that after her transfer, she was happy with her project in the Pioneer Group but did not like the fact that she was no longer a top performer because she

was being compared to other top Pioneer performers from across the country. Nevertheless, her annual compensation remained well into six figures. And despite Vogt's attempt to misconstrue Dawe's questions about when she was going to quit, the evidence demonstrates that Dawe's questions about Vogt's "timetable" occurred only after Vogt told Dawe in May 2012, that she felt it was time for her to move on. In response, Dawe told Vogt that she would support whatever she wanted to do. Viewed objectively, the evidence does not support a conclusion that TRC made Vogt's working conditions so intolerable that she was forced to quit.

{¶28} In fact, the record demonstrates that Vogt remained in the Pioneer position for well over a year before she voluntarily resigned. She began looking for employment outside of TRC as early as May 2012, six months after she began working in Pioneer and seven months before she chose to voluntarily resign in December 2012. The evidence further demonstrates that Vogt took time to negotiate her compensation package and start date with her new employer. That Vogt took so long to resign demonstrates that she did not fear imminent termination and was not enduring intolerable working conditions. Thus, to the extent she asserts a claim for constructive discharge, the claim fails as a matter of law.

{¶29} Because there are a genuine issues of material fact regarding whether Vogt's exclusion from the integration and management of the Advanced Dialysis centers, and her transfer to the Pioneer Group, were adverse employment actions, the trial court erred in granting summary judgment on Vogt's gender discrimination claim.

C.    Retaliation

**{¶30}** Vogt also claims that the trial court erred in dismissing her retaliation claim because she produced sufficient evidence to establish a genuine issue of material fact that TRC retaliated against her because of her participation in protected activities in violation of R.C. 4112.02(I).[1]

**{¶31}** To establish a retaliation claim, Vogt must show that: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.

**{¶32}** As recently explained by this court in *Wholf v. Tremco Inc.*, 8th Dist. Cuyahoga No. 100771, 2015-Ohio-171, the employee's evidentiary burden of establishing a prima facie case in the first step of the burden-shifting analysis is one of production, not persuasion, and is not onerous. *Id.* at ¶ 43. Thus, to survive TRC's summary judgment motion, Vogt was required to produce evidence demonstrating that TRC took an adverse employment action against her because of her participation in protected activity. *Id.* at ¶ 47.

**{¶33}** Although TRC argued in its summary judgment motion that Vogt did not engage in protected activity because she never put any complaint in writing and never asked anyone for an investigation, Vogt produced evidence sufficient to demonstrate a genuine issue of material fact regarding whether she engaged in protected activity. In her

---

[1] R.C. 4112.02(I) states that "[i]t shall be an unlawful discriminatory practice * * * for any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section * * *."

deposition, Vogt testified that she complained to Yolanda Fowler, TRC's Director of People Services, in February 2011 that "decisions were being made based on my gender" relating to the integration of the Advanced Dialysis centers, and that she "felt it was unfair." Vogt testified that she again spoke with Fowler in March 2011, about being excluded from the integration, and that she asked Fowler to "get involved and help with the situation" because "she felt [she] was being discriminated against and [she] wanted help from People Services." Vogt also testified that she complained to Jackson in 2011 that she felt "harassed and humiliated" by the decision to remove her from the integration, and that she "felt his behavior was discriminatory."

{¶34} Jean Ysbrand, TRC's People Services Manager, admitted in her deposition that Vogt had commented during a meeting in the summer of 2011 that she was being excluded from the integration and from going into any of the centers at Dr. Anton's insistence, but Ysbrand considered Vogt's statement to be an offhand comment and did not investigate Vogt's concerns. Finally, Vogt testified that she complained in 2012 to Dawe, her supervisor in the Pioneer Group, after Stephen Gates, who was hired as Cleveland ROD after Vogt transferred to the Pioneer Group, told her that he hoped she was not upset about being removed from Cleveland but "it was just a male/female thing." Vogt testified that she told Dawe she was being discriminated against and believed her transfer to Pioneer was retaliation. In light of this evidence, there is a genuine issue of material fact whether Vogt's comments about the alleged discrimination were protected activity.

**{¶35}** Vogt also produced evidence to create a genuine issue of material fact regarding whether she was subjected to an adverse action as a result of the alleged protected activity. Vogt cannot rely on her exclusion from the integration of the Advanced Dialysis centers to support her retaliation claim because the alleged adverse action — the decision to exclude her and Priest from the integration — occurred before Vogt engaged in any protected activity. However, Vogt's transfer to the Pioneer Group occurred after her complaints of gender discrimination. As set forth above in our discussion regarding Vogt's gender discrimination claim, there is an issue of fact whether Vogt's transfer to the Pioneer Group was an adverse employment action. Specifically, although TRC contends that Vogt's transfer to the Pioneer position was a "spectacular opportunity" for top-performing RODs such as Vogt, and there is evidence that TRC offered the transfer to give Vogt a "clean slate" because she was so unhappy about her exclusion from the Advanced Dialysis centers, Vogt testified that she was "forced" to transfer to the Pioneer Group, and that her opportunities for promotions in Pioneer were not as good as opportunities for RODs who worked on the operational side of the business. Vogt also testified that she believed her transfer to Pioneer was in retaliation for her complaints. Accordingly, there is an issue of fact regarding whether Vogt's transfer to the Pioneer Group was an adverse employment action, and whether there was a causal link between the alleged adverse action and Vogt's complaints of gender discrimination. Therefore, the trial court erred in granting summary judgment on Vogt's retaliation claim.

D.     Promissory Estoppel

**{¶36}** To establish a promissory estoppel claim, Vogt must demonstrate that TRC made a clear and unambiguous promise it should have reasonably expected her to rely upon, she actually relied on the promise, and she suffered injury as a result of this reliance. *Clayton v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 101854, 2015-Ohio-1547, ¶ 16. The promise at the heart of a promissory estoppel claim must consist of more than a commitment to the employee's future career development or a vague assurance of job security. *Id.*

**{¶37}** In support of her promissory estoppel claim, Vogt claims that Priest promised her that she would be promoted to GROD and then to Divisional Vice President (DVP). She contends that Priest testified in his deposition that in December 2010, he told Vogt that Jackson had been hired as the new DVP, and that she should learn from and work closely with him because she was next in succession planning to be promoted to GROD, and then DVP.

**{¶38}** Priest actually testified, however, that his "hope" for Vogt was that she would continue to develop and potentially move into a GROD position, but not that she was guaranteed a promotion to GROD. Vogt herself testified that in December 2010, in connection with Jackson's hire, Priest told her that "he wanted [her] to work closely with [Jackson], that [Jackson] was only going to be in the position for a couple of years, and [Priest's] *intention* was that [she] would move into the group director position and advance to the divisional vice president position." (Emphasis added.)

**{¶39}** Priest's "intention" about Vogt's possible career development is not an unambiguous promise under the law, which recognizes that such commonplace statements about possible future events in employment situations are insufficient to support a promissory estoppel claim. *See Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 488-489 (6th Cir.1995) (affirming dismissal of plaintiff's promissory estoppel claim where the plaintiff was told there would be a place at the new terminal for him, that he would be given every opportunity to "go and grow" with the new company, and was told about the retirement plan and that he could expect to be there until retirement); *Hoyt v. Nationwide Mut. Ins. Co.*, 10th Dist. Franklin No. 04AP-941, 2005-Ohio-6367, ¶ 45 (company president's statements that plaintiff and her team would "run" a particular unit if the company acquired it were merely expressions of the president's plan and not specific and certain enough to support promissory estoppel claim); *McCullough v. Avon Lake McDonald's*, 9th Dist. Lorain No 95CA006066, 1995 Ohio App. LEXIS 3529 (Aug. 16, 1995) (affirming summary judgment in favor of employer because although the plaintiff was promised future opportunities, he was never provided a specific, unambiguous promise of continued employment).

**{¶40}** Vogt's reliance on Jackson's deposition testimony is likewise unavailing. Vogt cites Jackson's testimony that Priest told him that Vogt was the "likely candidate from a successor standpoint" and that "we needed to continue to work with [her] to develop her to that end" as evidence of a promise of a promotion to GROD. Such a statement — that one is a "likely" candidate for a higher position — is hardly a clear and

unambiguous promise of promotion sufficient to support a promissory estoppel claim. Rather, it suggests at most the company's aspirations for Vogt's future career development. Standing alone, "praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship." *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 543 N.E.2d 1212 (1989), paragraph three of the syllabus.

{¶41} Moreover, even if there were a clear and unambiguous promise, Vogt produced no evidence whatsoever that she relied upon the promise to her detriment. She produced no evidence that she forewent a job search, turned down any other employment opportunities, or relied in any other way on Priest's alleged statements. Because she cannot demonstrate the elements of a promissory estoppel claim, the trial court did not err in granting summary judgment to appellees on Vogt's promissory estoppel claim.

### III. Conclusion

{¶42} The first assignment of error, which contends the trial court erred in granting summary judgment on Vogt's gender discrimination claim, is sustained. The second assignment of error, which contends the trial court erred in granting summary judgment on the retaliation claim, is also sustained. The third assignment of error, which argues that the trial court erred in granting summary judgment on the constructive discharge claim, is overruled. The fourth assignment of error, which contends that the trial court erred in granting summary judgment on the promissory estoppel claim, is also overruled.

**{¶43}** Judgment affirmed in part, reversed in part, remanded for proceedings consistent with this opinion.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., A.J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS
(SEE SEPARATE OPINION)


EILEEN T. GALLAGHER, J., DISSENTING:

**{¶44}** I agree with the majority's treatment of the third and fourth assignments of error regarding Vogt's constructive discharge and promissory estoppel claims. However, I respectfully dissent from the majority's resolution of Vogt's gender discrimination and retaliation claims as argued in her first and second assignments of error.

### Gender Discrimination Claim

**{¶45}** As stated by the majority, to establish a prima facie case of gender discrimination, the employee must show that (1) she was a member of the statutorily

protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) either a person outside the protected class replaced her or she received different treatment than a similarly situated nonprotected employee. *Goodyear v. Waco Holdings, Inc.*, 8th Dist. Cuyahoga No. 91432, 2009-Ohio-619, ¶ 31, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**{¶46}** After careful review of the record and relevant evidence, I find Vogt has failed to establish a prima facie case of gender discrimination. In their opinion, the majority concludes that there are genuine issues of fact concerning whether Vogt's exclusion from the acquisition of Drs. Anton and Flauto's Advance Dialysis practice constituted an "adverse employment action." I disagree. While Vogt's role with the doctors business was altered, there was no evidence to suggest the business decision resulted in a "material adverse change in the terms of her employment." To the contrary, Vogt acknowledged in her deposition testimony that her title, base salary, and opportunity for bonuses remained the same.

**{¶47}** Moreover, Vogt has not demonstrated that she was subjected to less favorable treatment than any similarly situated male employee. Here, the undisputed facts of this case reflect that both Vogt and Priest, her male supervisor, were excluded from the acquisition of Drs. Anton and Flauto's Advance Dialysis practice. The majority avoids concluding that Vogt was subjected to the same treatment as her male counterpart by stating that the decision to exclude Priest from the integration and management of the Advance Dialysis centers did not equally effect Priest's day-to-day life because he did not

live or work exclusively in the greater Cleveland area. Respectfully, I am not persuaded by this distinction between Priest and Vogt. In my view, the location of Priest's day-to-day work activities does not supersede the overwhelming testimony concerning Priest and Vogt's active and equal role in the negotiations and attempted acquisition of Advance Dialysis prior to their exclusion from the business transaction. Accordingly, I find no distinction between the treatment of Priest and Vogt relating to the business decision to minimize their involvement in the acquisition and management of Drs. Anton and Flauto's Advance Dialysis practice.

{¶48} Similarly, I am not persuaded by the majority's determination that there are genuine issues of material fact regarding Vogt's claim that her transfer to the Pioneer Group was an adverse employment action. Beyond Vogt's subjective belief that the Pioneer Group was "a less prestigious group," she has failed to present any tangible evidence to support her contention that her transfer to the Pioneer Group resulted in a material adverse change in the terms and conditions of her employment. When Vogt voluntarily transferred to the Pioneer Group, she remained a Regional Operations Director and continued earning the same base salary and yearly bonuses. While Vogt testified at her deposition that she previously received significant performance-based bonuses prior to her transfer to the Pioneer Group, she has presented no evidence to suggest she was denied the opportunity to earn these "subjective bonuses" as a result of her voluntary transfer. In fact, Vogt's supervisor at the Pioneer Group, Lisa Dawe, averred that Vogt's salary increased while she was with the Pioneer Group and that "Ms. Vogt was subject to the

same bonus plan before and after she transitioned to the Pioneer Group." Under these circumstances, I find Vogt failed to present genuine issues of material fact regarding whether her transfer to the Pioneer Group constituted an adverse employment action.

{¶49} Finally, I note that the majority's opinion ignores the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden-shifting framework of a gender discrimination claim. Once a prima facie case is established for discrimination, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802. If the employer carries its burden, the plaintiff must demonstrate that the employer's articulated reasons for the discharge are a pretext for impermissible discrimination. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm*., 66 Ohio St.2d 192, 198, 421 N.E.2d 128 (1981). Thus, even if Vogt established a prima facie case of gender discrimination, appellees are entitled to summary judgment if they have rebutted the presumption by articulating "a legitimate, nondiscriminatory reason for its decision," and Vogt has not proven pretext by a preponderance of the evidence. *Goodyear*, 8th Dist. Cuyahoga No. 91432, 2009-Ohio-619, ¶ 32.

{¶50} In this case, appellees submitted the affidavit testimony of Dennis Kogod, the Chief Operating Officer of HealthCare Partners, L.L.C., a division of DaVita, and Tom Usilton, the Senior Vice President and Chief Development Officer of HealthCare Partners, L.L.C., a division of DaVita. Collectively, Kogod and Usilton averred that the decision to limit Vogt and Priest's involvement in the acquisition of Drs. Anton and Flauto's Advance

Dialysis practice was a "business decision" based on the doctor's distrust and prior bad business dealings with Vogt and Priest. Further, Usilton averred that Vogt's transition to the Pioneer Group was intended to provide her with a "great opportunity" to "open up a lot of doors across the company." In my view, this evidence sufficiently articulated a legitimate, nondiscriminatory reason for the purported adverse employment actions and Vogt has failed to establish that the employer's explanation was a pretext for discrimination.

{¶51} For these reasons, I would affirm the trial court's conclusion that Vogt's gender discrimination claim fails as a matter of law. Accordingly, I would overrule Vogt's first assignment of error.

### Retaliation Claim

{¶52} To establish a case of retaliation, a claimant must prove that "(1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 13. "[T]o prevail on a retaliation claim, a plaintiff must show that retaliation is a determinative factor — not just a motivating factor — in the employer's decision to take adverse employment action." *Nebozuk v. Abercrombie & Fitch Co.*, 10th Dist. Franklin No. 13AP-591, 2014-Ohio-1600, ¶ 45.

{¶53} With respect to the third element of a retaliation claim, the majority reiterates its position that Vogt's transfer to the Pioneer Group constituted an adverse employment action. As stated, I find Vogt has failed to demonstrate that she was subjected to an adverse employment action as a result of her transfer to the Pioneer Group. Accordingly, I find Vogt has failed to set forth prima facie evidence of retaliation.

{¶54} Based on the foregoing, I would affirm the trial court's conclusion that Vogt's retaliation claim fails as a matter of law. Accordingly, I would overrule Vogt's second assignment of error and affirm the trial court's grant of summary judgment in its entirety.