[Cite as *CommuteAir, L.L.C. v. Bremer*, 2025-Ohio-4843.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

COMMUTEAIR LLC AS SUCCESSOR
IN INTEREST TO CHAMPLAIN                  :
ENTERPRISES LLC DBA
COMMUTEAIR,                               :

      Plaintiff-Appellee,               :

                         No. 114665

      v.                                :

KARL BREMER,                              :

      Defendant-Appellant.              :

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 23, 2025

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-22-971637

*Appearances:*

Weltman, Weinberg & Reis, Co., L.P.A. and Andrew C.
Voorhees, *for appellee*.

Michael T. Conway and Company and Michael T. Conway,
*for appellant*.

ANITA LASTER MAYS, P.J.:

{¶1} Defendant-appellant Karl Bremer ("Bremer") appeals the trial court's

judgment in favor of plaintiff-appellee CommuteAir LLC as Successor in Interest

to Champlain Enterprises LLC dba CommuteAir ("CommuteAir") for breach of contract liability and an award of attorney fees.  Bremer asks this court to remand for a new trial.  We affirm.

## I.      Facts and Procedural History

{¶2} On November 22, 2022, CommuteAir filed a complaint alleging that Bremer entered into an agreement with them where Bremer received a pre-employment bonus in the amount of $22,100 in exchange for a 24-month employment commitment after the start date and successful completion of the training program.  Per the agreement, Bremer was required to log 250 hours of training, accumulate training hours per the training plan schedule, and provide monthly progress and proof of completion of flight hours to CommuteAir.  Under the Failure to Fulfill the Rotor Transition Program ("RTP") or Commitment Period-Repayment Obligations section, Bremer was required to repay the bonus of $22,100 if he voluntarily terminated his participation in the program before completion.  Other conditions for Bremer's repayment obligations included the following:

> If you do not successfully complete any other required training during the Commitment Period, or if your employment is terminated for cause during the Commitment Period, you agree to repay the RTP bonus amount paid by CommuteAir on the same terms as if you voluntarily terminated your employment. However, if your employment termination date is after completing twelve (12) months of employment as a pilot, you are only responsible for repaying fifty percent (50%) of the RTP Bonus amount.
>
> If you do not voluntarily repay CommuteAir the full amount of your repayment obligation as described herein within thirty (30) days after

any failure to complete the RTP of the termination of your employment, you agree to pay any costs CommuteAir incurs to collect your repayment obligation from you, including its costs of litigation, attorneys' fees, both pre-judgment and post-judgment interest at the maximum rate allowed by law (the "Make Whole Fee").

If CommuteAir pays the RTP Payment and you do not complete any or all of the RTP associated with the agreed upon date noted above, CommuteAir will issue a stop payment on the funds. You will be responsible for any bank fees or penalty charges CommuteAir may incur due to the stop payment.

**{¶3}** According to the RTP, Bremer's employment start date was July 15, 2018. Bremer, however, delayed that date until March 18, 2019. Bremer voluntarily resigned from CommuteAir by email on March 10, 2020, less than a year after his start date without completing the necessary training hours. At trial, Bremer testified that a death in his family and his wife's cancer diagnosis caused him to miss his training sessions. Tr. 54.

**{¶4}** In CommuteAir's complaint, it alleged that Bremer left the company before completing the required commitment period, which required Bremer to repay the bonus. However, according to CommuteAir, Bremer failed to repay the bonus and owes CommuteAir $22,100 for the bonus, $3,363.14 in accrued interest, and other costs and fees associated with the proceedings. Additionally, at trial, David Fitzgerald, senior vice president of flight operations for CommuteAir, testified that had Bremer not resigned he would have been scheduled for additional pilot training and that they were attempting to schedule Bremer for more simulator training events, but Bremer did not respond to their attempts at communicating with him. Tr. 28.

**{¶5}** Bremer filed his answer admitting that he made an agreement with CommuteAir but argued that the agreement was not enforceable. On September 20, 2023, Bremer filed a motion for judgment on the pleadings, and the trial court denied it. On January 24, 2024, a bench trial was held. On February 26, 2024, CommuteAir submitted its written closing arguments, as instructed by the trial court. Bremer submitted his combined closing argument and motion to dismiss. On March 12, 2024, CommuteAir filed a brief in opposition to Bremer's motion to dismiss. On June 18, 2024, the trial court denied Bremer's motion to dismiss.

**{¶6}** On June 20, 2024, the trial court entered a judgment in favor of CommuteAir, stating in its order and opinion:

> Having carefully considering [sic] the testimony and evidence presented at trial and in the parties' written closing statements, the Court finds that the Plaintiff has proven by a preponderance of the evidence, that the RTP Letter, admitted into evidence as Exhibit 1, constituted a binding written contract, and that Defendant breached that contract. Wherefore, the Court enters judgment, in favor of Plaintiff, and against Defendant, in the amount of $22,100.00 in compensatory damages. Plaintiff is also entitled to reasonable attorneys' fees.

Journal Entry No. 182929137 (June 20, 2024).

**{¶7** On July 1, 2024, Bremer filed a motion for a new trial, and the trial court denied it. On September 11, 2024, a hearing on CommuteAir's claim for attorney fees was held. The trial court granted CommuteAir $7,735 in attorney fees.

**{¶8}** Bremer filed this appeal, assigning three assignments of error for our review:

1.  The trial court's final judgment in favor of the plaintiff and against the defendant on liability and amount of $22,100 plus attorneys' fees of $7,735 and any other awarded relief based on plaintiff's breach of contract claim is reversible error as it is against the manifest weight of the evidence and the judgment is also contrary to law;

2.  The trial court erred to the prejudice of the defendant when it did not dismiss the plaintiff's case as it is remedially preempted by the Federal Railway Labor Act; and

3.  The trial court erred to the prejudice of the defendant when it did not grant the plaintiff's motion for a new trial based on new evidence showing the plaintiff claimed to the Federal Aviation Administration it terminated the plaintiff's employment after claiming at the same time he voluntarily resigned from his employment in its case in chief.

## II.  Manifest Weight of the Evidence

### A.  Standard of Review

{¶9} "'Under the manifest weight of the evidence standard, this court must give great deference to the trial court's findings of fact.'" *State v. Johnson*, 2020-Ohio-3186, ¶ 11 (8th Dist.), quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 26. "'Judgments supported by competent, credible evidence must be affirmed.'" *Id.*, quoting *State v. Kahn*, 2017-Ohio-4067, ¶ 29 (8th Dist.).

{¶10} When reviewing a decision from the trial court, "we must refrain from making factual findings or weighing the credibility of witnesses and must instead determine whether the evidence in the certified record supports" the trial court's decision.  (Cleaned up.)  *Mikhelson v. Dir., Ohio Dept. of Job & Family Servs.*, 2025-Ohio-2524, ¶ 12 (8th Dist.).  If such evidence is found, the reviewing court

may not substitute its judgment for that of the trial court. *Id.*, citing *Wilson v. Unemp. Comp. Bd. of Rev.*, 14 Ohio App.3d 309, 310 (8th Dist. 1984).

## B. Law and Analysis

{¶11} In Bremer's first assignment of error, he argues that the trial court's final judgment in favor of the plaintiff and against the defendant on liability and the award of $22,100, plus attorney fees of $7,735 and any other awarded relief based on plaintiff's breach-of-contract claim is reversible error because it is against the manifest weight of the evidence and the judgment is also contrary to law. Specifically, Bremer alleges that he was forced to resign and left the employment involuntarily because continued employment with CommuteAir would not make him a safe pilot given he was not trained. Additionally, Bremer alleges that there was no evidence that CommuteAir had any sense of urgency in training him.

{¶12} CommuteAir alleges that after Bremer signed the RTP commitment letter on July 15, 2018, Bremer deferred his training start date to March 18, 2019. Bremer notified CommuteAir of personal issues that required delays in his training, and CommuteAir agreed to provide additional training for Bremer and delayed his start date until March 18, 2019. Despite this, Bremer sent an email on March 10, 2020, to CommuteAir voluntarily resigning from his position, but did not repay the RTP bonus of $22,100, thereby breaching his contract with CommuteAir.

{¶13} To state a claim for breach of contract, CommuteAir must allege (1) the existence of a binding contract, (2) the nonbreaching party performed his or

her contractual obligations, (3) the other party failed to fulfill its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages as a result of the breach. *Szewczyk v. Century Fed. Credit Union*, 2022-Ohio-1683, ¶ 19 (8th Dist.), citing *Cynergies Consulting, Inc. v. Wheeler*, 2008-Ohio-3362, ¶ 15 (8th Dist.).

{¶14} "When the terms in a contract are unambiguous, courts will not create a new contract by finding an intent not expressed in the clear language employed by the parties." *Id.* at ¶ 20, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978). "A court may not put words into a contract that the parties themselves failed to include." *Id.*, citing *Porterfield v. Bruner Land Co.*, 2017-Ohio-9045, ¶ 16 (7th Dist.). "Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations." *Id.*, citing *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, ¶ 25 (9th Dist.).

{¶15} After a review of the terms in the RTP commitment contract, we determine that the language is unambiguous. CommuteAir made a conditional offer of employment and set out the terms and conditions for accepting the pre-employment RTP offer. The RTP letter specifically stated: "After careful consideration of your qualifications, CommuteAir is making a conditional offer of employment . . . ." "This Commitment Letter ('Agreement') sets out the terms and conditions for accepting the pre-employment Rotor Transition Program." Further:

Based upon your successful completion of CommuteAir's pilot recruitment process, we are offering you employment as a pilot contingent upon your satisfaction of the R-/ATP aeronautical experience requirement and other conditions described herein. By accepting this agreement, you are entered into the Rotor Transition Program ("RTP"), and are therefore eligible for an amount of twenty-two thousand one-hundred dollars ($22,100.00 "RTP Bonus"). The RTP Bonus will be paid in installments, each such installment an "RTP Payment" based on your completion of qualified flight hours. Any difference between the RTP Bonus and the cumulative amount paid in RTP payments for flights hours will be paid to the Pilot Applicant on or before the projected employment start date of November 12, 2018.

{¶16} Additionally, if Bremer did not complete the required training or if he was terminated for cause, he was responsible for repaying the bonus. If Bremer did not voluntarily repay the bonus, then he was responsible for paying the bonus and attorney fees to CommuteAir.

{¶17} Despite the aforementioned terms, Bremer voluntarily left his position on March 10, 2019, but argues that he was constructively discharged because of lack of training and CommuteAir's lack of urgency in training him. Bremer states that after he continued to delay his training because of a death in the family and his wife's cancer diagnosis, CommuteAir did not schedule further trainings, leading him to resign. However, Bremer has failed to provide any evidence supporting his contentions, and CommuteAir testified that they were attempting to schedule Bremer for more simulator training events, but Bremer did not respond to their attempts at communicating with him. Tr. 28. Additionally, Bremer was required by the contract to repay his bonus if he left the program.

{¶18} The trial court stated in its order and opinion:

At trial Defendant admitted that he signed the RTP Letter, that the RTP Letter constituted an agreement between the parties, and that he received the $22,100.00 RTP bonus. The RTP Letter states that, in exchange for the RTP bonus, Defendant was required to complete the training program and maintain employment as a pilot in active service for at least twenty-four months after the training period. The RTP Letter stated if Defendant voluntarily terminated his position in the RTP program before completion Defendant was required to repay the RTP bonus. Further, if Defendant did not voluntarily repay the RTP bonus within thirty days of termination, Plaintiff was entitled to attorneys' fees and interest at the legal rate.

It is undisputed that Defendant did not complete the training program and did not maintain continuous employment for twenty-four months from the commencement of his start date. However, Defendant raises two affirmative defenses to plaintiff's claim. First, Defendant claims he was constructively discharged because Plaintiff would not schedule him for simulator training.

. . .

The evidence at trial does not support Defendant's claim that he was constructively discharged. Defendant did not testify that his working conditions were unpleasant or unbearable. Rather, Defendant alleges he was not offered timely training sessions. Such delays do not rise to the level of unpleasantness that would compel a reasonable person to resign. Moreover, Plaintiff presented evidence that Defendant was scheduled for additional simulator training sessions, but could not attend due to personal issues. At the time Defendant resigned Plaintiff had him tentatively scheduled for additional training later that month, but had been unable to contact Defendant to confirm the training schedule. Accordingly, the Court finds Defendant has not met his burden of proving a constructive discharge.

Next, Defendant alleges that the RTP Bonus was not a bonus, but a wage that is not subject to forfeiture. Defendant fails to cite any case law in support of that position. The contract unambiguously states that the RTP Bonus is to be paid back if certain conditions are not met. It is undisputed that Defendant failed to meet those conditions.

Having carefully considering [sic] the testimony and evidence presented at trial and in the parties' written closing statements, the

Court finds that the Plaintiff has proven by a preponderance of the evidence, that the RTP Letter, admitted into evidence as Exhibit 1, constituted a binding written contract, and that Defendant breached that contract. Wherefore, the Court enters judgment, in favor of Plaintiff, and against Defendant, in the amount of $22,100.00 in compensatory damages. Plaintiff is also entitled to reasonable attorneys' fees.

Journal Entry No. 182929137 (June 20, 2024).

{¶19} This court must give great deference to the trial court's findings of fact and must be mindful of the presumption in favor of the factfinder. We agree with the trial court that Bremer has not demonstrated he resigned as a result of a constructive discharge. "Constructive discharge exists where an employer's actions make working conditions so intolerable that a reasonable person, under the circumstances, would have felt compelled to resign." *Montgomery v. ExchangeBase, LLC*, 2024-Ohio-2585, ¶ 53 (8th Dist.), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 588-589 (1996). "'A claim of constructive discharge is in essence a claim that the employer's conduct was so egregious that the employee was forced to sever the employment relationship involuntarily.'" *Id.*, quoting *Vogt v. Total Renal Care, Inc.*, 2016-Ohio-4955, ¶ 24 (8th Dist.), citing *Bowers v. Hamilton City School Dist. Bd. of Edn.*, 2002-Ohio-1343, ¶ 16 (12th Dist.). "Ohio courts apply an objective test in determining whether an employee was constructively discharged, considering 'whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent.'" *Id.*, quoting *Mauzy* at 588-589; *Vogt* at ¶ 25.

{¶20} Bremer has not demonstrated that his working conditions were so intolerable that a reasonable person would be compelled to resign. His claim that CommuteAir failed to provide adequate training is also not supported by the record. CommuteAir tentatively scheduled Bremer for additional training but was unable to contact him.

{¶21} Bremer further claims that the $22,100 CommuteAir gave him was a wage and not a bonus and he worked for CommuteAir for more than 12 months. Bremer's assertions are not well taken. First, Bremer's start date was March 19, 2019, and he tendered his resignation on March 10, 2020, just nine days shy of a full year. Second, $22,100 was a bonus payment to Bremer and not a wage. A wage is earned as compensation for labor. *State ex rel. Matheny v. Indus. Comm. of Ohio*, 2022-Ohio-1824, ¶ 9 (10th Dist.). A bonus is defined as:

> "A premium paid in addition to what is due or expected. In the employment context, workers' bonuses are not a gift or gratuity; they are paid for services or on consideration in addition to or in excess of the compensation that would ordinarily be given."

*Avakian v. Avakian*, 2015-Ohio-2299, ¶ 47 (11th Dist.), quoting *Black's Law Dictionary* 144 (7th Ed. 2000).

{¶22} As a participant in the RTP, Bremer was not earning a wage, because he was not being compensated for his labor. He was in training to become a pilot, and the bonus payment to him was a part of CommuteAir's new hire pilot incentive

program. The money was in addition to the compensation he would earn as a pilot with CommuteAir. Thus, the $22,100 was a bonus payment and not a wage.

{¶23} Therefore, Bremer's first assignment of error is overruled.

## III. Federal Railway Labor Act

{¶24} In Bremer's second assignment of error, he argues that the trial court erred when it did not dismiss CommuteAir's case because it is preempted by the Federal Railway Labor Act ("RLA"). As explained by the United States Supreme Court:

> "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. To realize this goal, the RLA establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes. The first class, those concerning 'rates of pay, rules or working conditions,' are deemed 'major' disputes. Major disputes relate to 'the formation of collective [bargaining] agreements or efforts to secure them.' The second class of disputes, known as 'minor' disputes, 'gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.' Minor disputes involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.' Thus, 'major disputes seek to create contractual rights, minor disputes to enforce them.'"

*Ratkosky v. CSX Transp., Inc.*, 2009-Ohio-5690, ¶ 53 (8th Dist.), quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-253 (1994) (internal citations omitted).

{¶25} CommuteAir's disputes against Bremer are not labor disputes, and thus, do not fall under the authority of the RLA. "Where the union acts for some

arguably job-related reason and not out of pure social or political concerns, a labor dispute exists." *Fechko Excavating, Inc. v. Ohio Valley & S.*, 2009-Ohio-5155, ¶ 20 (9th Dist.), citing *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655,* 39 F.3d 191, 195 (8th Cir. 1994).

> Under the NLRA, "[t]he term labor dispute includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee."

*Id.*, quoting 29 U.S.C. 152(9).

**{¶26}** Bremer is not a member of a union, and the dispute with CommuteAir is not a labor dispute. It is a simple breach-of-contract claim where Bremer failed to adhere to the terms and conditions under his conditional employment contract with CommuteAir. Bremer's argument that this dispute is covered by the RLA is unfounded because minor disputes, under the RLA, involve controversies over the meaning of an existing collective-bargaining agreement. Bremer and CommuteAir did not have a collective-bargaining agreement.

**{¶27}** Therefore, Bremer's second assignment of error is overruled.

## IV.  Motion for New Trial

### A.  Standard of Review

**{¶28}** "[A] motion for a new trial pursuant to Civ.R. 59(A) which, on appeal, is generally reviewed under an abuse of discretion standard." *Shaw Steel, Inc. v.*

*Ronfeldt Mfg., L.L.C.*, 2016-Ohio-1117, ¶ 33 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**B.    Law and Analysis**

{¶29} In Bremer's third assignment of error, he argues that the trial court erred when it did not grant him a new trial based on new evidence that demonstrated CommuteAir claimed to the Federal Aviation Administration ("FAA") that it terminated his employment, but also simultaneously claimed in its complaint that Bremer voluntarily resigned from his employment.

{¶30} Civ.R. 59(A)(8) states: "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial."

{¶31} In Bremer's motion for a new trial, he argued that he recently discovered a review of the FAA's pilot's record database after the decision was docketed that CommuteAir lied to the FAA and claimed it terminated Bremer for performance reason and Bremer did not resign. To warrant the granting of a new trial on the grounds of newly discovered evidence

> "it must be shown that the new evidence (1) discloses a strong
> probability that it will change the result if a new trial is
> granted, (2) has been discovered since the trial, (3) is such as could not in the

exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."

(Cleaned up.)  *McNamara v. McNamara*, 2015-Ohio-2707, ¶ 21 (8th Dist.), quoting *State v. Barnes*, 2011-Ohio-2917, ¶ 23 (8th Dist.).

{¶32} The trial court, in its journal entry denying Bremer's motion for a new trial stated in part:

> While Defendant claims evidence discovered after trial from the FAA Pilot's Record Database shows that defendant was in fact fired for cause, rather than resigning, there are several issues with this argument.  First, as Plaintiff points out, the printout does not contain defendant's name and defendant fails to provide an affidavit attesting that the printout is what defendant alleges it to be.  Next, defendant does not submit an affidavit or any explanation for why this evidence could not have been discovered with reasonable diligence prior to trial.  Most importantly, it is disingenuous for defendant to claim at this juncture that he did not resign when defendant's counsel repeatedly represented at trial, and defendant himself testified, that defendant did in fact resign.

Journal Entry No. 185560836 (Aug. 27, 2024).

{¶33} Bremer does not demonstrate that the trial court abused its discretion.  Additionally, he does not demonstrate that this information discloses a strong possibility that it will change the result of a new trial if granted.  Furthermore, Bremer testified at trial that he resigned from CommuteAir.

{¶34} Therefore, Bremer's third assignment of error is overruled.

{¶35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
DEENA R. CALABRESE, J., CONCUR