CHRISTE et al., Appellees,

v.

GMS MANAGEMENT COMPANY, INC., Appellant.

[Cite as *Christe v. GMS Mgt. Co.* (1997), 124 Ohio App.3d 84.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18267.

Decided Oct. 22, 1997.

*Ken R. Teleis,* for appellees.

*Paul M. Greenberger,* for appellant.

REECE, Judge.

Appellant GMS Management Co. ("Landlord") appeals from the decision of the Barberton Municipal Court granting summary judgment in favor of appellees Charles and Lizabeth Christe ("Tenants"). We affirm.

I

In September 1995, Tenants visited Windsor Park Estates, an apartment complex owned by Landlord, to look at apartments. On September 18, 1995, Tenants filled out a two-page rental application for an apartment at Windsor Park, which was signed by Tenants and an agent of Landlord. In a portion of the rental application that Tenants were not to fill out, a space marked "Occupancy Date" had "10–15–95" written next to it. Tenants and Landlord executed a lease agreement for the apartment on September 22, 1995. The lease stated that the rental term would begin November 1, 1995, and run for one year.[1] At about the same time, Tenants gave Landlord a security deposit of $299.

In late September or early October 1995, Tenants informed Landlord that they would be unable to occupy the apartment and fulfill the lease. Landlord made no response. On October 13, 1995, Tenants sent Landlord their forwarding address and a request for the return of their security deposit. When Landlord had not returned Tenants' security deposit after at least a week, they again contacted Landlord by mail. Landlord responded in a letter dated November 1, 1995, stating that it had kept the security agreement as rent owed for the period between October 15 and October 31, 1995, when Tenants were to have occupied the premises according to the rental application. Landlord included an accounting of the charges, also stating that Tenants owed Landlord an additional $68.42.

---

1. The actual lease states that the lease would end on October 31, 1995—one day before it was to begin—but both parties concede that the ending date should have been October 31, 1996.

Landlord re-rented the apartment in question on November 1, 1995. The parties agree that Tenants are not liable to Landlord on the lease term that was to begin on November 1.

Tenants filed suit against Landlord in the Barberton Municipal Court, Small Claims Division, on November 30, 1995. Landlord answered and moved to transfer to the court's regular docket. The trial court granted the motion to transfer. Tenants thereafter moved for summary judgment, which Landlord opposed. The trial court granted Tenants' motion on July 2, 1996, awarding Tenants $598 in damages and attorney fees in an amount to be determined later. Landlord filed a notice of appeal on August 2, 1996, which we dismissed. Later, a hearing was held on the issue of attorney fees, and the trial court awarded Tenants $700 on November 27, 1996. This appeal followed.

## II

Landlord asserts five assignments of error. We turn to consideration of each, reviewing related assignments of error together.

### A

#### First Assignment of Error

"The trial court committed reversible error by granting summary judgment to appellees."

#### Second Assignment of Error

"The trial court committed reversible error by granting summary judgment to appellees because the unambiguous lease to which they were obligated requires *per diem* [*sic*] rent from the date of possession, and which incorporates therein the written lease application's occupancy/possession date of October 15, 1995."

Landlord's first and second assignments of error make the same assertion—that summary judgment was improper. Landlord argues that the plain terms of the lease and the rental application, considered together, prohibit granting the motion in favor of Tenants. We disagree.

Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

 Appellate review of a lower court's entry of summary judgment is *de novo*, applying the same standard used by the trial court. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274–1275. "We review the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion." *Am. Energy Servs., Inc. v. Lekan* (1992), 75 Ohio App.3d 205, 208, 598 N.E.2d 1315, 1317.

 A lease is a contract between the landlord and the tenant. "The construction of written contracts and instruments of conveyance is a matter of law." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. In interpreting a contract, courts apply several principles of construction. Where one instrument incorporates another by reference, both must be read together. 18 Ohio Jurisprudence 3d (1980), Contracts, Section 152. Courts should attempt to harmonize provisions and words so that every word is given effect. *Id.*, Section 157. Where there is doubt as to meaning, a contract is to be strictly construed against the party that drafted it. *Id.*, Section 149.

In construing the contract between Landlord and Tenants, we consider three provisions of the lease:

"Section 2—TERM AND RENT:

"For the term of One Year To Expire October 31, 1995 [*sic*] from and after the first day of November, 1995. The TENANT yielding and paying during the continuance of this lease unto the LANDLORD for rent of said premises * * * [$670 per month].

"Moreover, TENANT shall observe and perform all of its obligations under this lease (including the obligation to pay rent, but on a per diem basis), from and after the date the TENANT is given possession of the Premises through the commencement of the Term, as stated above.

"* * *

"SECTION 12—OCCUPANCY:

"* * *

"(C) TENANT agrees that the premises will only be occupied by those occupants set forth on the 'Rental Application' which is attached hereto and expressly made a part hereof.

"* * *

"SECTION 41—ENTIRE AGREEMENT/NO MODIFICATION:

"(A) This lease constitutes the entire agreement between LANDLORD and TENANT, and no representations, oral or written, not herein or attached hereto, shall bind either party."

Two relevant provisions are also contained in the rental application. The first is the space entitled "Occupancy Date," with a handwritten notation of "10–15–95." The second provision is section seven of the rental application, which reads: "APPLICATION DEPOSIT AGREEMENT PRELIMINARY. This Application Deposit Agreement is preliminary only, and does not obligate CMS to execute a lease or deliver possession of the proposed premises."

 We agree with Landlord that we must consider the rental application as a part of the lease. Section 12(C) of the lease specifically incorporates the rental application by reference. Contrary to Tenants' assertion, the rental application is not excluded by Section 41(A) of the lease. Section 41(A) serves to make the lease a complete integration, but specifically includes written representations "attached hereto." Section 12(C) makes clear that the rental application is attached to the lease by that same language, "attached hereto."

 We also agree that the term of one year to begin November 1, 1995, and the "Occupancy Date" of October 15, 1995 are not inconsistent. The second paragraph of Section 2 of the lease deals with a situation where a tenant comes into possession before the actual lease term begins. This arrangement is entirely possible. In such a situation, the tenant must pay rent on a per-day basis for his or her possession prior to the start of the lease term.

However, we must part ways with Landlord's interpretation of the contract that requires Tenants to pay rent for the period from October 15 to October 31, 1995, prior to the lease term. Section 7 of the rental application states that the application cannot in any way bind Landlord to rent or give possession of an apartment to Tenants. By the same token, Tenants could not be obligated to occupy or pay for the apartment at that time. Only Section 2 of the lease requires Landlord to deliver possession of, and Tenants to pay rent for, the apartment. In other words, Tenants were not contractually bound to take possession and pay rent as of October 15, 1995, but they could do so if they wished. If Tenants did occupy the apartment on or after October 15, they were contractually bound to pay Landlord for that time, on a per-day basis, until the lease term began on November 1.

Upon reviewing the evidence presented by the parties, we find that Tenants did not take possession of the apartment between October 15 and October 31, 1995, inclusive. Landlord has presented no evidence that it delivered possession of the apartment to Tenants. Tenants have presented uncontradicted evidence that they notified Landlord before October 15, 1995 that they would not be

occupying the apartment. Viewing the evidence in a light most favorable to the nonmoving party, we find that Landlord did not deliver possession to Tenants between October 15 and October 31, 1995. Because Tenants never took possession, they were not obligated under Section 2 of the lease to pay rent on a per-day basis. Landlord's first and second assignments of error are overruled.

## B

### Third Assignment of Error

"Appellees failed to establish the existence of any facts, material or otherwise, contrary to Civ.R. 56(C)."

Landlord argues that Tenants failed to produce evidence of the dignity required by Civ.R. 56(E) in their motion for summary judgment. Because exhibits submitted with Tenants' motion were not accompanied by a proper affidavit, Landlord argues that no facts were adduced that could support a motion for summary judgment. We disagree.

A plaintiff can move for summary judgment "with or without supporting affidavits." Civ.R. 56(A). Civ.R. 56(C) specifies that certain evidence can properly be considered by a trial court in a motion for summary judgment: "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact." "The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E)." *Skidmore & Assoc. Co. v. Southerland* (1993), 89 Ohio App.3d 177, 179, 623 N.E.2d 1259, 1260. However, if the opposing party fails to object to improperly introduced evidentiary materials, the trial court may, in its sound discretion, consider those materials in ruling on the summary judgment motion. *Id.* at 179–180, 623 N.E.2d at 1260–1261.

Landlord's argument must fail. Landlord failed to object to the unsworn exhibits in the trial court. Landlord cannot raise this issue for the first time on appeal. See *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640, 642–643. Landlord's third assignment of error is overruled.

## C

### Fourth Assignment of Error

"The trial court improperly found a violation of R.C. 5321.16(B) compounding that error by awarding damages thereon pursuant to 5321.16(C)."

Fifth Assignment of Error

"The trial court improperly ordered the return of double appellees' security deposit plus attorney fees and costs."

 In its fourth and fifth assignments of error, Landlord argues that the trial court erred by ordering Landlord to pay double damages and attorney fees to Tenants under R.C. 5321.16. We disagree.

R.C. 5321.16 deals with a landlord's return of a security deposit to a residential tenant. For a landlord to comply with R.C. 5321.16(B), four things must happen: (1) the rental agreement must be terminated, (2) the tenant must give written notice of where to send the security deposit, (3) the landlord must send a written itemization of charges that are properly deducted from the security deposit within thirty days of termination of the rental agreement, and (4) the landlord must return the rest of the security deposit within thirty days of termination of the rental agreement. Any amount that the landlord improperly deducts from the security deposit is "wrongfully withheld" under R.C. 5321.16(C), which provides for damages equal to the amount wrongfully withheld and reasonable attorney fees to be assessed against a landlord who does not comply with R.C. 5321.16(B).

The trial court properly found that Landlord violated R.C. 5321.16(B). The rental agreement was terminated between the parties, since Landlord re-rented the apartment. Tenants gave written notice of their new address. And, because we have already determined that Tenants did not owe rent for the period from October 15 to October 31, 1995, since Tenants never took possession, Landlord improperly withheld the full amount of Tenants' deposit. It does not matter that Landlord sent an itemization within thirty days—none of the charges assessed therein were proper, and Landlord wrongfully withheld the full security deposit of $299. Therefore, Landlord did not comply with R.C. 5321.16(B) and was subject to double damages and attorney fees under R.C. 5321.16(C). See *Dearwester v. Lagos* (1986), 33 Ohio App.3d 199, 514 N.E.2d 1136. Landlord's fourth and fifth assignments of error are overruled.

## III

All of appellant's assignments of error are overruled. The judgment of the Barberton Municipal Court is affirmed.

*Judgment affirmed.*

DICKINSON, P.J., and BAIRD, J., concur.