[Cite as *Szokan v. Stevens*, 2020-Ohio-7001.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| LINDA C. SZOKAN, EXECUTOR OF THE ESTATE OF DOLORES A. STEVENS, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NO. 2020-L-020** |
| - vs - | : | |
| LINDA C. SZOKAN, et al., | : | |
| Defendants | : | |
| DONALD H. STEVENS, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2017 CV 01098.

Judgment: Affirmed.

*Gary D. Zeid,* Sternberg & Zeid Co., L.P.A., 7547 Mentor Avenue, Suite #301, Mentor, Ohio, 44060-5466 (For Plaintiff-Appellee).

*Timothy H. Snyder,* 12373 Kinsman Road, Suite 105, P.O. Box 386, Burton, Ohio 44021 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Donald H. Stevens, appeals the trial court's declaratory judgment regarding the ownership of certain U.S. Savings Bonds that were bought during his marriage to the deceased, Delores A. Stevens. He contends the court misinterpreted their separation agreement in concluding that the bonds should be distributed as part of

deceased's estate. We affirm.

{¶2} Appellant and the deceased were married for approximately 27 years and had no children. During a 16-year period beginning in 1986, the couple purchased numerous U.S. Savings Bonds Series EE and I. Each bond expressly lists appellant and the deceased as co-owners. As of the date of the Stevens' dissolution in November 2002, the bonds were valued at more than $60,000.

{¶3} Prior to terminating their marriage, appellant and the deceased negotiated a separation agreement that was ultimately incorporated into the dissolution decree. In its preamble, the agreement provides that it was their mutual desire to "completely settle and determine" their respective rights "to any and all property, real and personal, each may have by virtue of their marriage * * *.' Article 7(D) of the agreement states that the document "constitutes the entire understanding of the parties, and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein * * *." In addition, Article 8 states that to be effective a modification or waiver of any agreement provision must be in writing and executed with the same formality as the agreement itself.

{¶4} Article 3 of the separation agreement governs the distribution of the marital property. Although section (E) of that provision is titled "RETIREMENT/PENSION, I.R.A., SHARES, STOCKS AND BONDS," it makes no reference to their collection of U.S. Savings Bonds. In fact, there is no reference to the bonds in Article 3 or throughout the entire agreement.

{¶5} In regard to property not expressly listed in the agreement, section (H) of Article 3 sets forth a catchall provision, which states: "The parties have effected, to their

mutual satisfaction, a division of all property, real and personal, of whatever kind or description, and wheresoever situation."

{¶6} As to the implementation of the separation agreement, Article 12(A) states: "Upon the signing of this Agreement, each party shall deliver to the other party, or permit the other party to take possession of all items or property to which he or she is entitled under the terms of this Agreement * * *."

{¶7} From the issuance of the dissolution decree in November 2002 until her death in May 2017, the deceased had exclusive possession of all bonds purchased during the marriage. Although a federal statutory procedure exists for removing a person's name from a U.S. Savings Bond when his co-ownership has been terminated, the deceased did not attempt to invoke the procedure. Moreover, she did not cash any of the bonds.

{¶8} Approximately one month before her death, the deceased executed a Last Will and Testament, in which she bequeathed her entire estate to her sister, Linda C. Szokan. In stating the bequest, the will does not cite or list any specific asset, but instead only refers to the "estate." As a result, there is no reference to the bonds in the will.

{¶9} The will also names Szokan as executor of the estate. Within three weeks of her sister's death, Szokan submitted the will to probate. One month later, Szokan filed a separate action on behalf of the estate seeking a declaratory judgment regarding the status of the bonds. Her complaint alleges that appellant claims ownership of the bonds because he is the surviving co-owner. Challenging his claim, the complaint alleges that the bonds should be declared estate assets because they were distributed to the deceased under the terms of the separation agreement.

{¶10} After Szokan amended her complaint by attaching copies of the separation

3

agreement, dissolution decree, will, and an inventory of the bonds, appellant moved for summary judgment on the declaratory judgment claim. In an affidavit accompanying the motion, appellant avers that at the time they negotiated the separation agreement in 2002, he and the deceased also reached an understanding that the bonds would remain titled in both of their names until one of them died, and that the survivor would become sole owner. He further states that the deceased retained possession of the bonds during her lifetime only as a matter of convenience and that she intended to send the bonds to him prior to her death. In addition, appellant argues that even though the separation agreement does not reference the bonds, its terms are consistent with their oral agreement that the survivor would become sole owner.

{¶11} Szokan filed a competing motion for summary judgment. As to appellant's averment of a separate understanding concerning the disposition of the bonds, Szokan asserts that the averment could not be considered because the terms of the separation agreement were plain and unambiguous. She further asserts that since the agreement had no specific reference to the bonds, Article 3(H) of the agreement, governing unenumerated property, controls. Construing that term, Szokan argues that the deceased's sole possession of the bonds after the dissolution was sufficient to establish her entitlement to sole ownership.

{¶12} In ruling in favor of Szokan, appellee, on both summary judgment motions, the trial court first held that under federal law ownership of the bonds can be modified through a property agreement that is incorporated into a divorce/dissolution decree. Next, the court concluded that the terms of the subject separation agreement were sufficient to establish that appellant and the deceased intended for her to receive the bonds as part

4

of the property distribution. Relying primarily upon Articles 3(H) and 12(A), the court held that the couple not only intended to divide all of their marital property, but also intended for the distribution to occur immediately; thus, the deceased's continuous possession of the bonds since the dissolution demonstrates that she became sole owner. Thus, the court found that the bonds were probate assets that would be distributed in accordance with the deceased's will.

{¶13} In challenging this decision, appellant asserts two assignments:

{¶14} "[1.] Reviewing both parties' motions for summary judgment de novo, the record is clear and convincing that the trial court erred to the prejudice of the appellant by granting the appellee-plaintiff's motion for summary judgment and denying the appellant-defendant's motion for summary judgment in favor of the appellee.

{¶15} "[2.] The trial court erred to the prejudice of the appellant by granting the appellee-plaintiff's motion for summary judgment as it lacked jurisdiction over the subject matter or otherwise and by failing to even rule thereupon."

{¶16} Since our ruling on appellant's jurisdictional argument could render his first assignment moot, we address his second assignment first. In arguing that the trial court did not have subject matter jurisdiction over the bond issue, he notes that in order to determine whether the deceased was the sole owner of the bonds prior to her death, it was necessary for the trial court to interpret the couple's 2002 separation agreement. He contends that as a probate court, the trial court lacked the authority to do so because once the agreement was incorporated into the dissolution decree, exclusive jurisdiction to construe and apply the agreement lies with the domestic relations court. We disagree.

{¶17} R.C. 2101.24(A)(1) sets forth an extensive list of judicial acts that a probate

5

court has exclusive jurisdiction to perform, including:

{¶18} "(a) To take proof of wills and to admit to record authenticated copies of wills executed, proved, and allowed in the courts of any other state, territory, or country * * *.

{¶19} "* * *

{¶20} "(c) To direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates;

{¶21} "* * *

{¶22} "(k) To construe wills;

{¶23} "(l) To render declaratory judgments * * *."

{¶24} Furthermore, a probate court "has plenary power at law or in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." R.C. 2101.24(C).

{¶25} Given these statutory provisions, a declaratory judgment proceeding can be maintained in a probate court for the purpose of determining title to alleged estate assets. *Wosniak v. Wosniak*, 90 Ohio App.3d 400, 408, 629 N.E.2d 500 (9th Dist.1993). Such a proceeding is permissible so long as the disputed assets are related to the administration of the estate. *Id.*

{¶26} Furthermore, emphasizing the probate court's "plenary power" under R.C. 2101.24(C), Ohio appellate courts have concluded that such a court has the authority to interpret a separation agreement when such a declaration is necessary to determine the extent and ultimate distribution of estate assets. *Estate of LaMar v. LaMar*, 9th Dist. Medina No. 2070-M, 1992 WL 150277, *2 (June 24, 1992); *Johnson v. Wheeler*, 10th Dist. Franklin No. 95APF07-839, 1996 WL 112641, *4-5 (Mar. 14, 1996).

6

{¶27} Here, it is undisputed that the deceased had sole possession of the bonds during the 15-year period prior to her death. Given these circumstances, a legitimate issue existed as to whether the bonds are estate assets. As a result, the determination of ownership of the bonds fell within the trial court's subject-matter jurisdiction as a probate court. Moreover, in making that determination, the trial court had the authority to construe and apply the terms of the 2002 separation agreement.

{¶28} As a separate argument under his second assignment, appellant contends that even if the trial court acted within the scope of its power in construing the separation agreement, it still should have deferred the issue to the domestic relations court under the jurisdictional-priority rule. That rule provides that when the same issue has been properly raised in two state courts of concurrent jurisdiction, the court that had its jurisdiction invoked first acquires exclusive authority to adjudicate the issue. *State ex rel. Consortium for Economic and Community Dev. for Hough Ward 7 v. Russo*, 151 Ohio St.3d 129, 2017-Ohio-8133, 86 N.E.3d 327, ¶ 8. However, the rule only applies when the two actions are pending at the same time. *Id.* at ¶ 11. Here, not only did the jurisdiction of the domestic relations court end in November 2002 with the issuance of the dissolution decree, but also there is nothing establishing that its jurisdiction was re-invoked via a motion regarding the ownership of the bonds. Thus, since the bond issue was only pending before the trial court, the jurisdictional-priority rule does not apply, and the trial court had the authority to resolve the parties' dispute regarding the interpretation of the separation agreement.

{¶29} Because the trial court did not exceed the scope of its jurisdiction by addressing the declaratory judgment claim, appellant's second assignment lacks merit.

7

Thus, we address appellant's challenge to the trial court's interpretation of the 2002 separation agreement set forth in his first assigned error.

{¶30} He asserts that since the separation agreement had no specific provision concerning the distribution of the bonds, it is evident that he and the deceased intended to continue their co-ownership notwithstanding the dissolution of their marriage. Appellant further asserts that since their co-ownership had not been altered, he became the sole owner of each bond immediately upon her death.

{¶31} In support, appellant emphasizes that pursuant to Title 31, Sections 353.50 and 360.50 of the Code of Federal Regulations (C.F.R.),[1] the manner in which a savings bond is registered is conclusive proof of its ownership. Thus, since all of the bonds bought during appellant's marriage were registered to him "or" the deceased, they were legally co-owners under the foregoing provisions. Nevertheless, appellant also acknowledges that federal law allows for modification of ownership rights through the terms of a settlement agreement. Title 31, Sections 353.22(a) and 360.22(a) both provide: "The Department of the Treasury will recognize a divorce decree that ratifies or confirms a property settlement agreement disposing of bonds or that otherwise settles the interests of the parties in a bond."

{¶32} Although Title 31, Sections 353.2 and 360.2 set forth definitions of various terms used in the two sets of regulations, a definition for the term "divorce" is not provided. However, under Ohio law, a "decree of dissolution of marriage has the same effect upon the property rights of the parties, including rights of dower and inheritance, as a decree

---

[1] The bonds purchased by appellant and the deceased included Series EE U.S. Savings Bonds and Series I U.S. Savings Bonds. Title 31, Section 353.01 et seq. govern the Series EE bonds, while Section 360.01 et seq. govern the Series I bonds.

8

of divorce." R.C. 3105.65(B). More generally, it has been noted that "[a]lthough some states attach different legal requirements to the termination of a marriage by divorce and dissolution * * *, the plain meaning of the word 'divorce' includes both procedures. *See e.g.,* 27A C.J.S. Divorce [Section] 2 ('When used without qualification, the term "divorce" imports a dissolution of the marriage relation between a husband and a wife, that is, a complete severance of the tie by which the parties are united.') * * *." *Hall v. France*, S.D.Ohio No. 2-12-CV-726, 2013 WL 1703358, *3 (April 18, 2013).

{¶33} Given the absence of any regulatory definition limiting the scope of the term divorce in Title 31, Sections 353.22(a) and 360.22(a), and given that the incorporation of a separation agreement into a dissolution decree has the same effect on the distribution of marital property as the incorporation of a settlement agreement into a divorce decree, the two sections likewise apply to a dissolution decree. Hence, if the terms of a separation agreement, as incorporated into a dissolution decree, alter the ownership of a bond as between the two original co-owners, the modification will be enforceable in seeking payment on the bond from the Department of the Treasury.

{¶34} In his brief, appellant does not contest the applicability of Sections 353.22(a) and 360.22(a) to the 2002 separation agreement he executed with the deceased. Rather, he asserts the trial court erred in holding that the agreement altered their relationship as co-owners. Thus, the dispositive issue is the proper interpretation of that agreement.

{¶35} "A separation agreement is a contract and its interpretation is a matter of law. *Forstner v. Forstner*, 68 Ohio App.3d 367, 372, 588 N.E.2d 285 (11th Dist.1990). Review of a matter of law is de novo. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 596, ¶ 14.

9

{¶36} "The cardinal principle in contract interpretation is to give effect to the intent of the parties. *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. Such intent is presumed to reside in the language the parties chose to employ in the agreement. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. If the language of the contract is clear and unambiguous, the contract must be enforced as written. *Corl v. Thomas & King*, 10th Dist. No. 05AP-1128, 2006-Ohio-2956, ¶ 26. Ambiguity exists only when the terms of an agreement cannot be determined within the four corners of the contract or where the language of the agreement is susceptible to two or more reasonable interpretations. *United States Fid. & Guar. Co. v, St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 55, 716 N.E.2d 1201 (2d Dist.1998)." *Yodzis v. Savercool*, 6th Dist. Lucas No. L-12-1159, 2012-Ohio-5558, ¶ 9-10.

{¶37} "'[A] writing * * * will be read as a whole, and the intent of each part will be gathered from a consideration of the whole.' *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.,* 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997). 'Courts should attempt to harmonize provisions and words so that every word is given effect.' *Christe v. GMS Mgt. Co.,* 124 Ohio App.3d 84, 88, 705 N.E.2d 691 (9th Dist.1997)." *Kent State Univ. v. Bradley Univ.*, 2019-Ohio-2088, 136 N.E.3d 774, ¶ 39 (11th Dist.).

{¶38} In holding that the terms of the 2002 separation agreement are sufficiently clear to establish that the deceased became the sole owner of the bonds, the trial court relied on three terms. First, the court cites Article 7(D), which provides that the signed agreement sets forth "the entire understanding of the parties," and there were no separate

10

covenants or undertakings between them. Second, the trial court notes that under Article 12(A), appellant and the deceased promised to deliver or allow each other to immediately take possession of all property distributed to each under the agreement. The third term cited by the trial court is Article 3(H) captioned "Property Not Specifically Enumerated."

{¶39} The September 2002 separation agreement states in pertinent part:

{¶40} "WHEREAS, said husband and wife desire to settle their differences and property rights arising out of their marital relationship, and by these presents do, *forever and completely settle and determine, the following, but not limited to*:

{¶41} "(1) the past, present and future care, maintenance and support of each other;

{¶42} "(2) *the right to any and all property, real and personal, each may have by virtue of their marriage*;

{¶43} "(3) dower, curtesy, and all rights of descent and distribution;

{¶44} "(4) payment of debts and taxes; and

{¶45} "(5) all other benefits and privileges conferred and all obligations imposed on each by virtue of their marriage relationship or otherwise.

{¶46} "NOW THEREFORE, * * * *said husband and wife agree that*:

{¶47} "* * *

{¶48} "ARTICLE 3: DIVISION OF PROPERTY

{¶49} "* * *

{¶50} "(E) RETIREMENT/PENSION, I.R.A., SHARES, STOCKS AND BONDS

{¶51} "[This section does not reference any bonds and does not reference the bonds currently in issue.]

11

{¶52} "* * *

{¶53} "(H) PROPERTY NOT SPECIFICALLY ENUMERATED

{¶54} "The parties have effected, to their mutual satisfaction, a division of all property, real and personal, of whatever kind or description, and wheresoever situat[ed].

{¶55} "* * *

{¶56} "ARTICLE 7: FULL DISCLOSURE, COMPLETE AGREEMENT, & BINDING EFFECT

{¶57} "The parties each respectively acknowledge that:

{¶58} "* * *

{¶59} "(C) the provisions herein, including the provisions regarding the support and division of property are fair, just, and reasonable under all circumstances;

{¶60} "(D) this Agreement constitutes the entire understanding of the parties, and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein;

{¶61} "* * *

{¶62} "ARTICLE 8: MODIFICATION AND WAIVER

{¶63} "A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. * * *

{¶64} "ARTICLE 9: MUTUAL RELEASES

{¶65} "Each party releases and discharges the other from all causes of action, claims, demands, or rights, which either of the parties had or now has against the other arising or growing out of the marital relationship, except any cause of action for divorce

12

or dissolution of marriage or as provided within this Agreement. The parties mutually agree that each may freely sell or otherwise dispose of his or her property in any manner including by gift, deed or Last Will and Testament. Each party does hereby release and relinquish to the other and is by those presents barred from any and all rights or claims by way of dower, curtesy, or any probate rights caused by the death of a spouse, and will be treated as if having predeceased and not been married to the other spouse.

{¶66} "* * *

{¶67} "ARTICLE 12: IMPLEMENTATION OF AGREEMENT

{¶68} "(A) Upon the signing of this Agreement, *each party shall deliver to the other party, or permit the other party to take possession of all items of property to which he or she is entitled under the terms of the Agreement * * *.*" (Emphasis added.)

{¶69} First, to the extent that Article 7(D) states that the separation agreement is meant to delineate all promises and understandings between appellant and the deceased in regard to the termination of their marriage, it does not permit an oral agreement to the contrary. Therefore, even if, as appellant asserts, he and the deceased orally agreed to maintain co-ownership of the bonds until either of them died, such a covenant directly conflicts with Article 7(D) and is unenforceable. If the couple wanted to continue as co-owners notwithstanding the dissolution, such an agreement had to be included in their written agreement.

{¶70} Second, given its caption and concise language, Article 3(H) was patently intended to be a catchall provision applicable to all marital assets not delineated in the separation agreement. Since the bonds are not mentioned, the catchall provision applies. Furthermore, under that provision, appellant and the deceased determined how they were

13

going to divide the unenumerated assets. Again, given the use of the word "divide" in Article 3(H), continuing co-ownership of an asset is not permissible. Hence, the bonds, like all other marital assets, were subject to distribution between them.

{¶71} Third, pursuant to both Article 3(H) and Article 12(A), this distribution was to occur immediately upon the execution of the separation agreement. Appellant agreed to either deliver to, or allow the deceased to keep possession of, all assets which were distributed to her under the agreement. As a result, the intended distribution of an unenumerated asset under Article 3(H) was established through a party's continued possession of the asset after the dissolution of the marriage.

{¶72} In relation to the bonds, there is no dispute that the deceased maintained sole possession during the 15-year period between the dissolution and her death. Appellant did not present any evidence showing he ever contested her possession of the bonds. Accordingly, under the unambiguous catchall provision in Article 3(H), the bonds were distributed to the deceased in 2002, and she was their sole owner when she died in 2017.

{¶73} In challenging the trial court's interpretation of Article 3(H), appellant argues that the language of the catchall provision is too general and broad to deprive him of his ownership rights in the bonds. Citing *Klan v. Klan*, 8th Dist. Cuyahoga No. 86897, 2006-Ohio-1738, he contends that the separation agreement had to have express language in regard to the bonds before his ownership rights could be extinguished.

{¶74} *Klan* is distinguishable on the grounds that it involved the termination of a beneficiary's rights to the proceeds of a life insurance policy. Notwithstanding the manner in which appellant's name was printed on each bond as a co-owner, his legal interest in

14

the bonds was no different than his interest in any other marital asset that he purchased with the deceased during their marriage. Since appellant has not shown that the catchall provision in Article 3(H) is generally unenforceable, the bonds were properly distributed to the deceased in accordance with the provision.

{¶75} Upon reading the parties' separation agreement as a whole, Article 3(H), the language in the preamble, and Article 12(A), regarding possession of the property, dictate that the bonds in the decedent's continued possession 15 years after the agreement belonged to her, and according to Article 7(D) and Article 8, any alleged oral agreement to the contrary is unenforceable.

{¶76} Accordingly, appellee was entitled to summary judgment on her declaratory judgment claim because: (1) there is no genuine issue as to any material facts; (2) she is entitled to prevail as a matter of law; and (3) even when the evidence is construed in a manner most favorable to appellant, a reasonable person can only reach a conclusion adverse to him. Civ.R. 56(C); *Klan*, 206-Ohio-1738, at ¶ 9

{¶77} Therefore, appellant's first assignment lacks merit, and the judgment of the Lake County Court of Common Pleas, Probate Division, is affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

MATT LYNCH, J., dissents with a Dissenting Opinion.

15

_____

MATT LYNCH, J., dissents with a Dissenting Opinion.

{¶78} I respectfully dissent and would reverse the decision of the probate court declaring the savings bonds to the assets of the decedent's estate. These bonds were registered in Stevens' name and the decedent's name and, under federal law, became Stevens' property upon the decedent's death unless disposed of otherwise by the Separation Agreement. The probate court frankly acknowledged that "[t]he Separation Agreement did not * * * list or mention for division the U.S. Savings Bonds co-owned by the couple" (sic). Despite the absence of anything in the Agreement identifying the bonds or providing for their division, the majority affirms "that the terms of the 2002 separation agreement are sufficiently clear to establish that the deceased became the sole owner of the bonds." *Supra* at ¶ 38. They do no such thing. Rather, the conclusion that the Agreement gave the bonds to the decedent rests on nothing more than the lower court's invention of provisions in the Agreement to effect what it presumes the parties must have intended. This exercise in the creation of terms for the purpose of giving ownership of the bonds to the decedent is contrary to both federal and Ohio law. Accordingly, I dissent.

{¶79} The essential facts and applicable law in this case are as follows: The bonds in question were purchased during the course of the marriage and registered in the names of "Delores A Stevens or Donald H Stevens." The ownership of bonds is governed by federal regulations. Under those regulations, "[r]egistration is conclusive of ownership." 31 C.F.R. 353.5(a). Registration of a bond in the form "A or B" is indicative of co-ownership. 31 C.F.R. 353.7(a)(2). "If one of the coowners named on a bond has died, the surviving coowner will be recognized as the sole and absolute owner * * *." 31 C.F.R.

16

353.70(b)(1). "The Department of the Treasury will recognize a divorce decree that ratifies or confirms a property settlement agreement disposing of bonds or that otherwise settles the interests of the parties in a bond." 31 C.F.R. 353.22(a). Inasmuch as the parties' Separation Agreement does not "list or mention" the division of the bonds and co-owner Delores has died, co-owner Stevens remains the "sole and absolute" owner. Thus, the declaration that the bonds are the property of the decedent's estate is contrary to federal law.

{¶80} The failure of the Separation Agreement to provide for the disposition of the bonds violated Revised Code 3105.63(A)(1) which provides: "The separation agreement shall provide for a division of all property * * *." *Lanzara v. Lanzara*, 8th Dist. Cuyahoga No. 75751, 2000 WL 336540, *3 ("[p]ursuant to R.C. 3105.63(A)(1), a separation agreement must contain a division of *all* property, not just property jointly owned by husband and wife"). "When a separation agreement omits assets that are both substantial in relative amount and material to an informed and deliberate agreement about an equitable division of the property, such omissions render the dissolution decree voidable, and the decree can be vacated by motion for relief filed under Civ.R. 60(B)(5)." *In re Murphy,* 10 Ohio App.3d 134, 461 N.E.2d 910 (1st Dist.1983), paragraph two of the syllabus; *Salundari v. Permadi*, 9th Dist. Medina No. 15CA0040-M, 2016-Ohio-7818, ¶ 7-8 (cases cited).

{¶81} In the present case, neither party sought to vacate the Separation Agreement to provide for a division of the bonds (such relief, in any event, is beyond the scope of the probate court's jurisdiction). Instead, the probate court determined that the Agreement "adequately disposed of the bonds" not because there is any provision in the

17

Agreement that did so but because "[s]ixty thousand dollars in savings bonds is a substantial amount, which would not have been overlooked by the parties." The parties may have declared that they "effected, to their mutual satisfaction, a division of all property," and they may (or may not) have intended to do so, but their Agreement does not substantiate their claim.

{¶82} The Separation Agreement provides in relevant part:

[3.](E) RETIREMENT/PENSION, I.R.A., SHARES, STOCKS AND BONDS
Husband has a retirement account with the Ohio Police and Fire Pension Fund. Wife is currently on Social Security Disability that will become a private pension at the age of fifty-five (55). As Wife and Husband each have their own retirement accounts, they agree that each shall retain their respective accounts free and clear of all claims of the other and shall execute any documents necessary to enforce this agreed disposition.

* * *

[3.](H) PROPERTY NOT SPECIFICALLY ENUMERATED
The parties have effected, to their mutual satisfaction, a division of all property, real and personal, of whatever kind of disposition, and wheresoever situated.

* * *

[7.](D) This Agreement constitutes the entire understanding of the parties, and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein * * *.

{¶83} It should be clear from the foregoing that the Agreement does not directly or indirectly mention the bonds or provide for their division. It follows that the bonds were not divided, that Stevens and the decedent remained co-owners, and that, upon the decedent's death, Stevens became sole owner.

{¶84} The majority affirms the probate court's award of the bonds to the decedent

18

based on the provision concerning unenumerated assets. The majority writes: "[U]nder that provision, appellant and the deceased had already determined how they were going to divide the unenumerated assets. Again, given the use of the word 'divide' in Article 3(H), continuing co-ownership of an asset is not permissible. Hence, the bonds, like all other marital assets, were subject to distribution between them." *Supra* at ¶ 70.

{¶85} Contrary to the majority's reading, Article 3(H) does not explain "how they were going to divide the unenumerated assets." The declaration in the Agreement that "[t]he parties have effected * * * a division of all property" simply does not explain or elucidate "how they were going to divide the unenumerated assets." Rather, it is a declaration that they had effected such a division to their mutual satisfaction. In light of the fact that the Agreement is silent with respect to the bonds' existence and that, after separating, the bonds continued to be registered in the names of both parties, this declaration is either false or, as Stevens maintains, the parties intended to continue joint-ownership of the bonds. Either way, the parties, contrary to R.C. 3105.63(A)(1), did not dispose of all their property in the Agreement. This failure, however, does not authorize the probate court or this court to effect what the parties themselves failed to do. As explained above, the proper remedy would have been a motion for relief from judgment. In the absence of such relief, the Agreement must be applied as written, not as it ought to have been written. As written, the bonds were not divided or otherwise disposed of. Ownership of the bonds remained as it had during the course of the marriage.

{¶86} The majority then asserts that the use of the word "divide" or "division" (which merely tracks the language of the statute) precludes the possibility of continuing co-ownership. No authority is cited for this proposition which would significantly restrict

19

the freedom of parties to a dissolution from disposing of their property in a manner they deem equitable or appropriate. At least one court has expressly rejected such an interpretation.

> The purpose * * * of R.C. 3105.63's mandate is not to literally divide all property owned by the parties but rather to ensure that the separation agreement has accounted for all of the parties' assets. Clearly, in electing joint ownership of this particular piece of realty, the appellant and appellee considered and dealt with the property. The separation agreement, therefore, satisfies the mandate of R.C. 3105.63.

*Daidone v. Daidone*, 9th Dist. Lorain No. 3980, 1986 WL 9346, *1.

{¶87} Such an interpretation is also contrary to actual practice in domestic relations law where, for various reasons, parties to a dissolution intentionally retain joint-ownership of property. *See, e.g., Stone v. Stone*, 3d Dist. Hardin No. 6-04-12, 2006-Ohio-1996, ¶ 2 ("[a]s part of the dissolution agreement and division of property, the parties agreed to continue jointly owning a two-unit duplex"); *Wymer v. Wymer*, 11th Dist. Portage No. 1354, 1984 WL 7298, *1 ("[i]n the decree of dissolution which ended their marriage, the parties agreed the residence should remain the joint property of the parties until sold by mutual agreement"). Again, this writer is aware of no authority that would render such agreements invalid or impermissible under R.C. 3105.63.

{¶88} Assuming, arguendo, that the parties' declaration that they had divided all property to their satisfaction may be construed to mean that they intended to divide the bonds as well, there is no legitimate basis for simply awarding the decedent full ownership. The majority affirms this "distribution" based on a provision in the Agreement that "each party shall * * * permit the other party to take possession of all items of property to which he or she is entitled under the terms of this Agreement" and the decedent's

20

physical possession of the bonds after dissolution. The argument seems to be that, since she retained possession of the bonds after separation, she must have been entitled to them under the Agreement. The logic, however, is circular inasmuch as the Agreement does not actually entitle her to possession of the bonds. Regardless, federal law is clear that "[r]egistration is conclusive of ownership." The fact that the decedent retained possession of the bonds for fifteen years after dissolution and never attempted to alter their registration inspires no confidence in the conclusion that the bonds were distributed to the decedent in 2002 and that she was their sole owner at the time of her death in 2017.

{¶89} In sum, the following points should be considered: The Separation Agreement makes no reference to the existence of the bonds. The Agreement makes no provision for the division of unenumerated property. The Agreement does not state that the parties are entitled to keep whatever property remains in their possession. Under federal law, registration, not possession, is determinative of ownership. Despite this, the majority maintains that the Agreement "dictate[s] that the bonds in the decedent's continued possession 15 years after the agreement belonged to her." *Supra* at ¶ 75. I must respectfully dissent.