[Cite as *Szewczyk v. Century Fed. Credit Union*, 2022-Ohio-1683.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

GARY SZEWCZYK,                                  :

    Plaintiff-Appellant,                 :

                                                 No. 110822

    v.                                              :

CENTURY FEDERAL CREDIT UNION,  :

    Defendant-Appellee.                  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 19, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-937175

---

## *Appearances:*

Branstetter, Stranch & Jennings, PLLC, Alyson Steele Beridon, and J. Gerard Stranch, IV, pro hac vice;  Cohen & Malad, LLP and Lynn A. Toops, pro hac vice, *for appellant*.

Bricker & Eckler, LLP and Daniel C. Gibson;  Litchfield Cavo, LLP, James R. Branit, pro hac vice, and James D. Sloan, pro hac vice, *for appellee*.

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Plaintiff-appellant Gary Szewczyk ("appellant") appeals from the trial court's August 13, 2021 judgment granting the motion to dismiss of defendant-appellee Century Federal Credit Union ("appellee" or "Century"). After a thorough review of the facts and law, we affirm.

**Factual Allegations and Procedural History**

{¶ 2} In September 2020, appellant filed this putative class action against Century on behalf of himself and all others similarly situated. Appellant asserted a claim for breach-of-contract, including breach of the covenant of good faith and fair dealing, and a claim for unjust enrichment.

{¶ 3} Appellant alleged in his complaint that he has a checking account with appellee and opted in to appellee's standard overdraft practices. According to appellant, appellee charged account holders overdraft fees on accounts that were never actually overdrawn. Appellant alleged that on November 27, 2015, he was "assessed a $25 Overdraft Fee on a $65 withdrawal when his account, as demonstrated by the statement provided by Century, was not even negative after that withdrawal." Complaint, ¶ 14. Thus, according to appellant, "the ATM transaction did not overdraw [his] account, yet Century improperly assessed [him] an Overdraft Fee for that transaction, in breach of Century's contract documents." *Id.* Appellant attached Century's "Membership and Account Agreement" to his complaint. The agreement incorporates several documents, including Century's

"Funds Availability Policy Disclosure," "Fee Schedule," "Courtesy Pay Disclosures," and "Electronic Fund Transfer Agreement and Disclosure."

{¶ 4} Century's Membership and Account Agreement provides that it "covers your rights and responsibilities concerning your accounts and the rights and responsibilities of the Credit Union providing this Agreement (Credit Union)." The agreement further provides that

> [b]y signing an Account Card * * * you * * * agree to the terms and conditions in this Agreement, and any Account Card, Funds Availability Policy Disclosure, Truth-in-Savings Disclosure, Electronic Fund Transfers Agreement and Disclosure, Privacy Disclosure, or Account Receipt accompanying this Agreement, the Credit Union's bylaws and policies, and any amendments to these documents from time to time that collectively govern your membership and accounts.

{¶ 5} The agreement contains a "Transaction Limitations" provision, which, in part, provides for "Withdrawal Restrictions." Under "Withdrawal Restrictions" the agreement provides that

> [w]e will pay checks or drafts, permit withdrawals, and make transfers from available funds in your account. *The availability of funds in your account may be delayed as described in our Funds Availability Policy Disclosure.* We may also pay checks or drafts, permit withdrawals, and make transfers from your account from insufficient available funds if you have established an overdraft protection plan or, if you do not have such a plan with us, in accordance with our overdraft payment policy.

(Emphasis added.)

{¶ 6} A provision in the agreement titled "Overdrafts" provides in relevant part as follows:

> If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, transaction, or other item posted to your account plus any applicable

fee ("overdraft"), we may pay or return the overdraft. The Credit Union's determination of an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline with only one (1) review of the account required. We do not have to notify you if your account does not have sufficient available funds to pay an overdraft. Your account may be subject to a charge for each overdraft regardless of whether we pay or return the overdraft. For ATM and onetime debit card transactions, you must consent to the Credit Union's overdraft protection plan in order for the transaction amount to be covered under the plan.

{¶ 7} The "Overdrafts" provision further has a section regarding "Order of Payments," which reads,

Checks, drafts, transactions, and other items may not be processed in the order that you make them or in the order that we receive them. We may, at our discretion, pay a check, draft, or item, and execute other transactions on your account in any order we choose. The order in which we process checks, drafts, or items, and execute other transactions on your account may affect the total amount of overdraft fees that may be charged to your account. Please contact us if you have any questions about how we pay checks or drafts and process transfers and withdrawals.

{¶ 8} The "Courtesy Pay Disclosure" provides that

Courtesy Pay is an enhancement to your account that allows for a check, Point of Sale (POS), automatic debits (ACH), ATM withdrawals, and Bill Payer withdrawals drawn against a share draft account that does not have sufficient funds available at the time of the presentment.

{¶ 9} The Fee Schedule informs members that the fee for an ATM overdraft is $25.

{¶ 10} The Funds Availability Policy Disclosure provides that:

[o]ur policy is to make funds from your cash and check deposits available to you, in total or in part according to the Right to Hold policies outlined below on the next business day after we receive your deposit. Electronic direct deposits will be available on the day we receive the deposit. *Once they are available, you can withdraw the*

*funds in cash and we will use the funds to pay checks that you have written.*

(Emphasis added.)

{¶ 11} Further, the "Funds Availability Policy Disclosure" delineates when funds will not be immediately available:

> *In some cases, we will not make all of the funds that you deposit by check available to you on the next business day that we receive your deposit.* Funds may not be available until the second business day after the day of your deposit. However, the first $225.00 of your deposit will be available on the first business day after the day of your deposit. If we are not going to make all of the funds from your deposit available on the next business day, we will notify you at the time you make your deposit. We will also tell you when the funds will be available.

(Emphasis added.)

{¶ 12} In regard to ATM usage, the Electronic Fund Transfer Agreement and Disclosure states that "[b]ecause of the servicing schedule and processing time required in ATM operations, *there may be a delay between the time a deposit (either cash or check) is made and when it will be available for withdrawal.*" (Emphasis added.)

{¶ 13} Century filed a Civ.R. 12(B)(6) motion to dismiss appellant's complaint, which appellant opposed. The trial court granted the motion. Appellant now appeals, raising the following sole assignment of error for our review:

> The trial court ("Trial Court") erred when it granted Century Federal Credit Union's ("Century") Motion to Dismiss. There is no language in the parties' contract that unambiguously authorizes Century to assess overdraft fees when the monthly account statements provided by Century show that the account was never overdrawn. Mr. Szewczyk thus stated a claim for breach-of-contract, including breach of the implied covenant of good faith and fair dealing. The Trial Court's finding that the contract unambiguously authorized the challenged fees

improperly rested on a series of factual assumptions that were outside the pleadings and unsupported by the evidence. Mr. Szewczyk also stated a claim for unjust enrichment based on Century's inequitable collection and retention of overdraft fees in the alternative to his contract claims.

**Law and Analysis**

### Standard of Review

{¶ 14} In his sole assignment of error, appellant contends that the trial court erred in dismissing the complaint for failure to state a claim on which relief could be granted pursuant to Civ.R. 12(B)(6).

{¶ 15} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim on which relief can be granted "is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992), citing *Assn. for Defense of Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117, 537 N.E.2d 1292 (1989).

{¶ 16} A trial court's review of a Civ.R. 12(B)(6) motion to dismiss is limited to the four corners of the complaint along with any documents properly attached to, or incorporated within, the complaint. *Glazer v. Chase Home Fin. L.L.C.*, 8th Dist. Cuyahoga Nos. 99875 and 99736, 2013-Ohio-5589, ¶ 38. An appellate court reviews, de novo, a trial court's decision granting a motion to dismiss under Civ.R. 12(B)(6). *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

{¶ 17} In our review of a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences

in favor of the plaintiff. *Jenkins v. Cleveland*, 8th Dist. Cuyahoga No. 104768, 2017-Ohio-1054, ¶ 8, citing *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 6. For a party to ultimately prevail on the motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that would justify a trial court granting relief. *Jenkins* at *id.*, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

**No Breach-of-Contract**

{¶ 18} Appellant contends in his complaint that there is no language in Century's contract that unambiguously allows the credit union to assess overdraft fees when the monthly account statements show that the account was never overdrawn and, therefore, appellee breached the contract by charging an overdraft fee.

{¶ 19} To state a claim for breach-of-contract, the plaintiff must allege (1) the existence of a binding contract, (2) the nonbreaching party performed his or her contractual obligations, (3) the other party failed to fulfill its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages as a result of the breach. *Cynergies Consulting, Inc. v. Wheeler*, 8th Dist. Cuyahoga No. 90225, 2008-Ohio-3362, ¶ 15, citing *All Star Land Title Agency, Inc. v. Surewin Invest., Inc.*, 8th Dist. Cuyahoga No. 87569, 2006-Ohio-5729. At issue in this case is whether Century failed to fulfill its contractual obligations.

{¶ 20} When the terms in a contract are unambiguous, courts will not create a new contract by finding an intent not expressed in the clear language employed by

the parties. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). A court may not put words into a contract that the parties themselves failed to include. *Porterfield v. Bruner Land Co.*, 2017-Ohio-9045, 103 N.E.3d 152, ¶ 16 (7th Dist.). Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, 89 N.E.3d 274, ¶ 25 (9th Dist.).

{¶ 21} According to appellant, the contract is ambiguous because it does not define "available funds" or "available account balance." In his estimation, these terms mean "actual balance."

{¶ 22} Appellee contended in its motion to dismiss that the documentation unambiguously provided that Century will charge overdraft fees for overdrafts of the "available balance," which Century argued means "the money in an account minus holds placed on funds for uncollected deposits and pending debit transactions." Century's Motion to Dismiss, p. 12. According to appellee, the definition of available balance is "a well-established industry" one. *Id.* Appellant contended that appellee's definition is "outside the pleadings and inappropriate on a motion to dismiss." Appellant's Brief in Opposition, p. 10. We disagree with appellant. The four corners of the documents are unambiguous that "available funds" or "available funds balance" do not equate to the actual funds that may be in a member's account.

{¶ 23} It is true that the Membership and Account Agreement does not specifically define "available funds" or "available funds balance." However, "[a]

writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997). "Where one instrument incorporates another by reference, both must be read together. * * * Courts should attempt to harmonize provisions and words so that every word is given effect." *Christe v. GMS Mgt. Co.*, 124 Ohio App.3d 84, 88, 705 N.E.2d 691 (9th Dist.1997).

{¶ 24} Construing the documents as a whole in this case, it is clear and unambiguous that "available funds" and "available account balance" are not synonymous with "actual balance," as appellant contends. Rather, a member's available funds balance can be less than his or her actual balance. For example, in regard to ATM card usage, the Electronic Fund Transfer Agreement and Disclosure states that "[b]ecause of the servicing schedule and processing time required in ATM operations, there may be a delay between the time a deposit (either cash or check) is made and when it will be available for withdrawal." Thus, if a member makes an ATM deposit of $100 into his or her account, his or her actual balance may reflect that $100, but that $100 may not be included in the member's available balance.

{¶ 25} The Funds Availability Policy Disclosure also unambiguously provides that there is distinction between available account balance and actual account balance. It explains that funds are available pursuant to Century's "Reservation of Right to Hold" policy. For example, the provision states in part that "[i]n some cases, we will not make all of the funds that you deposit by check available to you on

the next business day that we receive your deposit." The disclosure also provides for "Holds on other Funds," and that "longer delays may apply," whereby Century "may delay your ability to withdraw funds deposited by check into your account an additional number of days" for various specified reasons.

{¶ 26} Thus, upon review of the documents as a whole, they unambiguously provide that a member will not have access to his or her funds immediately; that is, that the available balance can be less than the actual balance in a member's account. Because the contract is unambiguous, the overdraft fee that Century charged appellant was not in breach of its terms. The trial court therefore properly dismissed appellant's breach-of-contract claim.

## No Breach of Covenant of Good Faith and Fair Dealing

{¶ 27} The covenant of good faith and fair dealing is part of a contract claim and does not stand alone as a separate claim from breach-of-contract. *Lakota Local School Dist. Bd. of Edn.*, 108 Ohio App.3d 637, 646, 671 N.E.2d 578 (6th Dist.1996). Because we have found that there was no breach of the parties' contract, appellant's breach of the implied covenant of good faith and fair dealing must necessarily also fail, and dismissal was properly granted on the claim.

## Unjust Enrichment

{¶ 28} "[A] party pursuing relief for breach-of-contract cannot at the same time seek equitable relief for unjust enrichment." *Ownerland Realty, Inc. v. Zhang*, 12th Dist. Warren Nos. CA2013-09-077 and CA2013-10-097, 2014-Ohio-2585, ¶ 24. Appellant does challenge the validity or enforceability of the parties' agreement. He

has not pled any facts in his complaint that would make an unjust enrichment claim viable.  Therefore, his unjust enrichment claim fails as a matter of law.

**Conclusion**

{¶ 29} The trial court properly granted Century's Civ.R. 12(B)(6) motion to dismiss for failure to state a claim on which relief can be granted.  Appellant failed to state a claim for breach-of-contract, breach of the implied covenant of good faith and fair dealing, or unjust enrichment.  His sole assignment of error is therefore overruled.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR